UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RECEIVED
AUG 26 2026
PRO SE OFFICE

JASON WIMBERLY,

Plaintiff,

-against-

ATLANTIC DIALYSIS MANAGEMENT SERVICES, LLC; THE CHARTWELL LAW OFFICES LLP; HAYLEI P. PEART, ESQ.; GOLDBERG SEGALLA LLP; TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP; and STEPHEN D. STRAUS, ESQ.,

Defendants.

**Kaminsky, M.J.**

Civil Action No. **26-CV 5286 NRM-CHK**

**COMPLAINT AND JURY DEMAND**

Plaintiff Jason Wimberly, appearing pro se, alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from intentional attorney deceit committed in pending federal proceedings, in violation of New York Judiciary Law § 487, and from retaliation against and interference with Plaintiff's exercise of rights protected by the Americans with Disabilities Act, 42 U.S.C. § 12203.

2. Plaintiff is a dialysis-dependent individual with end-stage renal disease, congestive heart failure, Ehlers-Danlos syndrome, and dysautonomia. He receives dialysis four times per week.

3. Plaintiff sued Defendant Atlantic Dialysis Management Services, LLC ("Atlantic") under the ADA in Wimberly v. Atlantic Dialysis Management Services, LLC, No. 24-cv-9269 (JPO) (S.D.N.Y.). After dismissal, he appealed. No. 25-1527 (2d Cir.). His principal brief expressly asks the Court of Appeals to direct reassignment to a different district judge on remand.



REC'D IN PRO SE OFFICE
AUG 26 '26 PM4:13

4. While that appeal was pending, Plaintiff filed a new action concerning conduct occurring after the prior judgment. No. 26-cv-05949 (S.D.N.Y.). It was assigned to Judge Mary Kay Vyskocil.

5. Defendants' counsel then sought to have the new action declared related and transferred to the judge whose continued participation Plaintiff was contesting on appeal — and did so on a factual record that was false in two respects.

6. Plaintiff does not contend that vigorous advocacy, motions, extension requests, or related-case applications are unlawful. He contends that these Defendants supported those applications with materially false factual representations, declined to correct them after notice, and disregarded procedural obligations imposed on them while Plaintiff, who has no electronic filing privileges, bore the cost of correcting the record.

## JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under 42 U.S.C. § 12203, and jurisdiction under 42 U.S.C. §§ 12188 and 12203(c).

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claims under New York Judiciary Law § 487, which arise from the same submissions and the same course of conduct.

9. A plenary civil action under § 487 may be maintained even where the deceit occurred in a separate judicial proceeding. Urias v. Daniel P. Buttafuoco & Assocs., PLLC, 41 N.Y.3d 560 (2024).

10. Venue is proper under 28 U.S.C. § 1391(b)(1). All Defendants reside in New York State, and Atlantic resides in this District.

11. Atlantic maintains its headquarters and actual place of business at 23-14 College Point Boulevard, Flushing, Queens, New York 11356, and was served there through Steven Sotero, its Director of Corporate Compliance. Atlantic therefore resides in this District under 28 U.S.C. § 1391(c)(2), (d).

12. Venue is independently proper under 28 U.S.C. § 1391(b)(2). Atlantic's published corporate description states that it recruits clinic staff, performs billing and collections, carries out purchasing and managed care contracting, develops operating procedures for all sites, and carries out all business development, finance, accounting, and corporate functions. Those functions are performed at College Point.

13. Upon information and belief, Atlantic's decisions to retain The Chartwell Law Offices LLP, and to authorize, direct, adopt, or ratify the litigation conduct challenged in this action, were made or approved through Atlantic's management operations at College Point, within this District.

14. This action is not a continuation of either No. 24-cv-9269 or No. 26-cv-05949 and seeks no relief in either. It concerns the conduct of counsel and their principals, and the claims asserted here could not have been brought in either prior action.

**PARTIES**

15. Plaintiff Jason Wimberly resides in New York County. He is a person with disabilities within the meaning of the ADA. He was the plaintiff in No. 24-cv-9269, is the appellant in No. 25-1527, and is the plaintiff in No. 26-cv-05949.

16. Defendant Atlantic Dialysis Management Services, LLC is a New York limited liability company headquartered at 23-14 College Point Boulevard, Flushing, New York. It was the defendant in No. 24-cv-9269 and is the appellee in No. 25-1527.

17. Defendant The Chartwell Law Offices LLP is a law firm at 140 Grand Street, White Plains, New York, which represents Atlantic and related defendants in No. 26-cv-05949 and became substitute appellate counsel for Atlantic in No. 25-1527.

18. Defendant Haylei P. Peart, Esq. is an attorney at Chartwell who personally made the representations described below.

19. Defendant Goldberg Segalla LLP is a law firm that represented Atlantic in No. 24-cv-9269 and in No. 25-1527 and is a defendant in No. 26-cv-05949.

20. Defendant Traub Lieberman Straus & Shrewsberry LLP is a law firm that appeared for Goldberg Segalla, Scott R. Green, and Charles Lazo in No. 26-cv-05949.

21. Defendant Stephen D. Straus, Esq. is a partner at Traub Lieberman who personally made the representations described below.

## FACTUAL ALLEGATIONS

### A. The Prior Action and the Appeal

22. On December 5, 2024, Plaintiff commenced No. 24-cv-9269, asserting ADA and Rehabilitation Act claims concerning access to dialysis and to Medicaid non-emergency medical transportation. The action was assigned to Judge J. Paul Oetken.

23. On April 29, 2025, the court dismissed the federal claims. On June 13, 2025, it denied reconsideration and equitable relief, stating that the case was closed and that further relief had to be sought through "a timely appeal" or "a newly filed action."

24. Plaintiff pursued both avenues the court identified.

25. The appeal was docketed as No. 25-1527. After a procedural dismissal, the Court of Appeals recalled its mandate and reinstated the appeal on November 3, 2025.

26. Plaintiff filed his principal appellate brief on June 1, 2026. At pages 48 and 50, the brief asks the Court of Appeals to direct reassignment to a different district judge on remand.

27. The Court of Appeals directed Atlantic to respond by August 28, 2026. By August 2026 the appeal was active and approaching a dispositive briefing deadline.

28. Plaintiff's appeal, including the reassignment request within it, constitutes participation in an ADA proceeding under 42 U.S.C. § 12203(a) and the exercise of rights protected under § 12203(b).

**B. Defendants' Knowledge of the Appeal**

29. Atlantic is the appellee in No. 25-1527 and has known of the appeal at all times.

30. Goldberg Segalla attorneys Scott R. Green and William T. O'Connell appeared as counsel for Atlantic in the appeal. Goldberg Segalla therefore had actual knowledge of it.

31. On May 5, 2026, Plaintiff sent written notice to Green, Lazo, and O'Connell advising that he was preparing a separate action naming Goldberg Segalla, Green, and Lazo, and identifying Appeal No. 25-1527 by caption and docket number. Plaintiff expressly stated that he did not intend to name O'Connell, whose conduct he described as respectful and forthright.

32. On or about April 14, 2026, Chartwell attorney Carmen A. Nicolaou filed a notice of appearance for Atlantic in No. 25-1527 and confirmed the same by email, on which Defendant Peart was copied. On or about August 14, 2026, Green and O'Connell were terminated as appellate counsel.

33. Chartwell thereby assumed responsibility for defending an active ADA appeal in which Atlantic faced an August 28 deadline, and in which the relief Plaintiff sought included reassignment away from Judge Oetken.

**C. The New Action**

34. On July 14, 2026, Plaintiff commenced No. 26-cv-05949. It was assigned to Judge Vyskocil. Plaintiff filed an amended complaint on July 22, 2026.

35. The new action names eighteen defendants, including Atlantic, Central Park Dialysis Center, Terence Cardinal Cooke Health Care Center/ArchCare, Goldberg Segalla LLP, Green, Lazo, and numerous individual clinical and administrative staff. Only Atlantic was a defendant in the prior action.

36. The new action alleges, among other conduct: a Behavioral Plan imposed May 10, 2025; false chair-availability representations made March 7, 2026; premature termination of dialysis treatment on March 21, 2026; a directive that Plaintiff not document that termination; and the initiation of involuntary-discharge proceedings.

37. None of that conduct had occurred on April 29, 2025, when the prior action was decided. It could not have been relied upon as the factual basis of the prior action.

38. The amended complaint states on its face that the dismissed federal claims are on appeal.

**D. Straus's False Representation of August 19, 2026**

39. On August 19, 2026, Straus filed a pre-motion letter with Judge Vyskocil on behalf of Goldberg Segalla, Green, and Lazo. (No. 26-cv-05949, ECF No. 11.)

40. The letter represented: "[U]pon information and belief, plaintiff did not appeal the judgment of dismissal and the Prior Action is disposed."

41. The statement was false. The appeal was active, the mandate had been recalled, Plaintiff's brief was on file, Atlantic's response was due within nine days, and Goldberg Segalla attorneys had been counsel of record in that appeal until approximately five days earlier.

42. The existence of the appeal was ascertainable from the public appellate docket by a single search, and was stated on the face of Plaintiff's own amended complaint.

43. The status of the prior action was material. Straus's letter invoked res judicata and related-case referral, both of which depend on the posture and finality of the prior action.

44. The qualifier "upon information and belief" does not render the statement innocuous. Straus affirmatively asserted a verifiable procedural fact without consulting the docket on which it could have been confirmed or disproved in moments.

**E. Notice and Failure to Correct**

45. At approximately 6:04 p.m. on August 19, 2026, Plaintiff emailed Straus, advised him the representation was false, and transmitted the Second Circuit docket showing that No. 25-1527 was active. Plaintiff expressly asked Straus to advise the Court that the error had been brought to his attention.

46. Straus acknowledged the pendency of the appeal in response to Plaintiff the same day.

47. From that moment Straus possessed actual knowledge that the representation on the docket was false.

48. Upon information and belief, Straus did not promptly withdraw or correct the representation before the relief it supported was granted.

49. The failure to correct is pleaded as a distinct act. Whatever basis existed for the original statement was eliminated by Plaintiff's notice, and the false statement thereafter stood uncorrected in a filing seeking relief.

**F. The Extension Correspondence**

50. On August 17, 2026, Peart asked Plaintiff to consent to an extension of time for Atlantic and Central Park Dialysis Center to respond in No. 26-cv-05949.

51. Plaintiff consented to an extension to September 25, 2026, and asked whether Peart wished to prepare a joint letter. At 6:58 p.m. Peart replied: "I will prepare a joint letter advising the Court you consent to an extension."

52. Peart then sought a further extension to October 9. Plaintiff declined the additional time.

53. On August 18 Plaintiff advised Peart that he was still awaiting the promised draft. On the morning of August 19 Peart responded that the court did not require a joint letter, that she would submit directly, and that "there is nothing to review."

54. Plaintiff withdrew his consent and stated his reasons in writing, explaining that the joint submission had been a condition of his agreement.

55. Rule 2(G)(v) of Judge Vyskocil's Individual Practices requires an extension applicant to state whether the adversary consents and, if not, the reasons the adversary gave.

56. This correspondence is pleaded as circumstantial evidence bearing on Defendants' knowledge and intent. Plaintiff does not allege that the abandoned joint letter, standing alone, violates § 487.

**G. Plaintiff's Disclosed Procedural Circumstances**

57. On August 19, 2026, Plaintiff advised Peart and Nicolaou in writing that he has not consented to electronic service, has no electronic filing privileges, does not own a functioning computer, incurs PACER charges at his own expense when accessing filings, and must submit his filings through the Pro Se Intake Office.

58. Defendants therefore knew that inaccurate or procedurally defective submissions by represented parties imposed correction costs on Plaintiff that were not symmetrical between the parties.

**H. Peart's Representation and the Transfer**

59. On August 20, 2026, Peart filed a letter motion on behalf of Atlantic and Central Park Dialysis Center seeking a determination of relatedness and transfer to Judge Oetken. (No. 26-cv-05949, ECF No. 14.)

60. Peart expressly acknowledged that the prior action was "now pending appeal in the Second Circuit (25-1527)." Chartwell therefore had actual knowledge of the appeal when it sought the transfer.

61. Peart represented that the new action was "based upon the same alleged facts and circumstances upon which plaintiff relied upon as the basis for his prior action."

62. That representation was false or materially misleading. Substantial conduct pleaded in the new action postdated the prior judgment and could not have been relied upon as the basis for the prior action. The chronology appears on the face of the amended complaint Peart had before her.

63. The representation was material. Rule 13(a)(1)(B) of the Rules for the Division of Business Among District Judges turns on substantial factual overlap, and Rule 13(a)(2)(A) provides that party overlap alone will not suffice.

64. Neither ECF No. 11 nor ECF No. 14 disclosed to Judge Vyskocil that Plaintiff's pending appeal expressly sought reassignment away from the judge to whom Defendants asked that the action be sent.

65. Plaintiff opposed both requests in writing, setting out the chronology and advising that his appeal sought reassignment. His opposition was submitted through the Pro Se Intake Office and had not been docketed when the transfer was ordered.

66. On August 24, 2026, the new action was accepted as related to No. 24-cv-9269 and reassigned to Judge Oetken — the precise result both defense groups requested.

67. On August 25, 2026, Plaintiff filed a submission under Fed. R. App. P. 28(j) advising the Court of Appeals of the transfer and its bearing on the reassignment request pending there. Defendants received notice of that filing.

**I. Straus's August 26, 2026 Filing**

68. On August 26, 2026, Straus filed a letter motion with Judge Oetken seeking additional time for Goldberg Segalla, Green, and Lazo to respond in No. 26-cv-05949. The letter recounted that his earlier submission had raised referral to Judge Oetken and that the transfer had occurred.

69. Straus wrote: "We have not sought the consent of plaintiff in advance of filing this letter motion but have reason to believe any such request would be futile."

70. Judge Oetken's Individual Rules require counsel seeking an extension to seek the adversary's consent and, if consent is withheld, to state the reasons the adversary gave. Straus did neither, and said so on the face of the filing.

71. A prediction of futility is not consultation, and counsel's forecast of an adversary's position cannot supply the reasons that adversary would actually have given. The purpose of a conferral requirement is to obtain the adversary's actual position rather than opposing counsel's assumption of it.

72. Straus instead characterized Plaintiff as having refused consent to Atlantic's earlier request, omitting that Plaintiff had initially consented and withdrew only after Chartwell abandoned the joint-letter procedure Peart had proposed.

73. The August 26 filing shares a common feature with the August 19 representation: in both, Straus substituted assumption for information that was available to him. It is pleaded as circumstantial evidence bearing on intent.

### J. Concerted Pursuit of the Assignment

74. By August 2026, Goldberg Segalla and Atlantic were separately represented because Goldberg Segalla had itself become a defendant. Traub Lieberman represented Goldberg Segalla, Green, and Lazo; Chartwell represented Atlantic and related defendants and simultaneously defended Atlantic in the active appeal.

75. Notwithstanding their clients' divergent interests, both groups pursued the same immediate objective: assignment of No. 26-cv-05949 to Judge Oetken. Straus raised referral on August 19; Peart joined it on August 20.

76. The close sequencing, the identical objective, the transfer of appellate representation from Goldberg Segalla to Chartwell days earlier, Straus's denial of the appeal's existence, and Peart's acknowledgment of that same appeal while joining the request, together support a plausible inference of coordinated action taken with knowledge of Plaintiff's protected appellate activity.

**K. Plaintiff's Expenditures and Injury**

77. Plaintiff did not assume that Straus's August 19 representation was careless. Straus is an attorney of record, and his own clients had just been sued in No. 26-cv-05949 for making false statements in court filings. Plaintiff therefore considered it possible that Straus had information concerning the status of the appeal that Plaintiff did not have, and that something had occurred on the appellate docket of which Plaintiff was unaware. Plaintiff had no electronic filing privileges, no functioning computer, and no means of confirming the docket without cost, and he incurred that cost for that reason.

78. Plaintiff incurred PACER charges to obtain and print the Second Circuit docket in order to confirm that his appeal had not been dismissed or otherwise extinguished, and to attach documentary proof to his correspondence with Straus and to his corrective submission.

79. On Friday, August 21, 2026, and again on Tuesday, August 25, 2026, Plaintiff traveled to the United States Courthouse at 500 Pearl Street, New York, New York, in order to file papers through the Pro Se Intake Office, including materials directed to the late response in No. 26-cv-

05949, the absence of the promised joint submission, and the correction of the false representation concerning the appeal.

80. On each occasion Plaintiff incurred subway fare and Lyft fare. Plaintiff cannot reliably travel by subway alone in both directions because of his cardiac and autonomic conditions.

81. Transportation and PACER costs were incurred on or around those dates

82. Plaintiff has dysautonomia, a disorder of the autonomic nervous system that produces symptoms including tachycardia, blood-pressure instability, and presyncope in response to physiological and emotional stress.

83. Upon learning that opposing counsel had represented to a federal court that his appeal did not exist, and while unable to confirm otherwise without expense, Plaintiff experienced an episode of dysautonomic symptoms. He incurred out-of-pocket expense for measures taken to manage those symptoms.

84. Plaintiff pleads these expenditures as pecuniary loss. He does not seek recovery for the discomfort itself, and pleads only the money he actually spent.

85. Each expenditure identified in this section was incurred because of the conduct alleged and would not have been incurred otherwise. No verification of the appellate docket would have been necessary had Straus not represented that no appeal existed.

**FIRST CAUSE OF ACTION**

**New York Judiciary Law § 487**

**Against Stephen D. Straus, Esq., and Traub Lieberman Straus & Shrewsberry LLP**

86. Plaintiff repeats and realleges each preceding paragraph.

87. Judiciary Law § 487 imposes liability upon an attorney guilty of any deceit or collusion, or who consents to any deceit or collusion, with intent to deceive the court or any party. The injured party recovers treble damages.

88. Reliance is not an element. Amalfitano v. Rosenberg, 12 N.Y.3d 8 (2009). The attempt to deceive is itself the violation.

89. Straus was acting as an attorney in a pending judicial proceeding when he filed ECF No. 11.

90. His representation that Plaintiff "did not appeal the judgment of dismissal" and that "the Prior Action is disposed" was a statement of objectively verifiable fact, not legal argument, and it was false.

91. Intent to deceive may be inferred from the materiality of the statement to the relief sought, the ready availability of the true facts on a public docket, the actual knowledge of Straus's own clients who had appeared in the appeal, the statement of the appeal on the face of Plaintiff's amended complaint, the failure to correct after notice and acknowledgment, and the subsequent August 26 filing in which Straus again substituted assumption for available information.

92. As a direct and proximate result, Plaintiff incurred the PACER, printing, transportation, and symptom-management costs itemized above, which he would not otherwise have incurred.

93. Plaintiff seeks treble damages under § 487.

**SECOND CAUSE OF ACTION**

**New York Judiciary Law § 487**

**Against Haylei P. Peart, Esq., and The Chartwell Law Offices LLP**

94. Plaintiff repeats and realleges each preceding paragraph.

95. Peart was acting as an attorney in a pending judicial proceeding when she filed ECF No. 14.

96. Her representation that the new action was "based upon the same alleged facts and circumstances upon which plaintiff relied upon as the basis for his prior action" asserted a factual premise concerning the chronology of the two actions, and it was false or materially misleading.

97. The prior action was decided April 29, 2025. The new action pleads conduct of May 10, 2025, March 7, 2026, and March 21, 2026, among other later dates. Those events could not have been relied upon as the basis for the prior action, and the dates appear on the face of the pleading Peart had before her.

98. The representation was material to the relatedness determination Peart sought, and it was made with knowledge that the prior action was on appeal, which Peart expressly acknowledged in the same letter.

99. Plaintiff seeks treble damages under § 487 for the costs proximately caused, itemized above.

## THIRD CAUSE OF ACTION

**Retaliation — 42 U.S.C. § 12203(a)**

**Against All Defendants**

100. Plaintiff repeats and realleges each preceding paragraph.

101. Section 12203(a) makes it unlawful to discriminate against any individual because that individual has opposed an act made unlawful by the ADA or has made a charge, testified, assisted, or participated in any manner in an ADA investigation, proceeding, or hearing.

102. Section 12203 uses the term "no person," in contrast to the entity-specific terms used elsewhere in the ADA, and the difference is deliberate. Shotz v. City of Plantation, 344 F.3d 1161, 1167–68 (11th Cir. 2003).

103. Plaintiff engaged in protected activity by filing and litigating ADA claims, by appealing their dismissal, by seeking reassignment within that appeal, and by filing a further action alleging retaliation.

104. Each Defendant had actual knowledge of that activity.

105. Defendants sought and obtained the assignment of Plaintiff's continuation action to the judge whose reassignment he was seeking on appeal, using false factual representations concerning the existence of the appeal and the chronology of the claims, and without disclosing the pending reassignment request to the court from which they sought the transfer.

106. The retaliatory character of the conduct lies not in the making of a motion but in the false representations used to obtain it, the failure to correct after notice, and the knowing selection of a forum whose propriety was itself the subject of Plaintiff's protected appellate activity.

107. An action is materially adverse if it might dissuade a reasonable person from making or supporting a charge of discrimination, and the inquiry is context-specific. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68–69 (2006).

108. Causation is supported by the sequence: the brief seeking reassignment was filed June 1, 2026; Chartwell entered the appeal for Atlantic and Goldberg Segalla withdrew on or about August 14; Straus sought referral and denied the appeal on August 19; Peart joined on August 20; the transfer issued August 24; Plaintiff sought appellate intervention August 25; and Straus invoked the new assignment on August 26.

109. Atlantic and Goldberg Segalla are liable to the extent they authorized, directed, adopted, ratified, or knowingly accepted the conduct of their litigation agents undertaken within the scope of the agency and for their benefit.

110. Plaintiff seeks the declaratory and injunctive relief, costs, and fees available under 42 U.S.C. §§ 12188 and 12203(c), and such damages as are recoverable against each Defendant under the applicable remedial provision.

**FOURTH CAUSE OF ACTION**

**Coercion, Intimidation, Threats, or Interference — 42 U.S.C. § 12203(b)**

**Against All Defendants**

111. Plaintiff repeats and realleges each preceding paragraph.

112. Section 12203(b) makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by this chapter." It contains no adverse-action requirement and applies to "any person."

113. Plaintiff was exercising ADA rights by prosecuting his appeal, including the request for reassignment on remand.

114. The right Plaintiff was exercising is the substantive right to be free from disability-based discrimination. Appeal No. 25-1527 is the means by which he seeks to vindicate that right. Conduct directed at impairing the appeal, or at impairing the relief he seeks within it, therefore interferes with the right itself and not merely with a procedure.

115. Section 12203(b) protects the exercise and enjoyment of ADA rights. Where the only avenue remaining for vindicating a substantive ADA right is an appeal, interference with that avenue is interference with the right.

116. Straus interfered by representing to a court that the appeal did not exist — denying, in a filing seeking relief, the existence of the very proceeding through which Plaintiff was exercising protected rights — and by failing to correct that representation after notice and acknowledgment.

117. Peart interfered by seeking to place the continuation action before the judge whose reassignment Plaintiff sought, with knowledge of the appeal, and by supporting that request with a false factual premise concerning the chronology of the claims.

118. Atlantic and Goldberg Segalla are liable for interference undertaken by their litigation agents within the scope of the agency and for their benefit, and for conduct they authorized, directed, adopted, ratified, or knowingly accepted.

119. Plaintiff was required to expend the sums itemized above correcting the record in the district court and seeking relief in the Court of Appeals as a result.

120. Plaintiff seeks the relief available under 42 U.S.C. §§ 12188 and 12203(c).

## FIFTH CAUSE OF ACTION

**Retaliation — New York State Human Rights Law, N.Y. Exec. Law § 296(7)**

**Against All Defendants**

121. Plaintiff repeats and realleges each preceding paragraph.

122. Section 296(7) of the New York Executive Law makes it unlawful for any person engaged in any activity to which that section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under the Human Rights Law, or because he has filed a complaint, testified, or assisted in any proceeding under it.

123. The provision reaches "any person," and is not limited to the entity that engaged in the underlying discrimination.

124. The New York State Human Rights Law is to be construed liberally to accomplish its remedial purposes, and following the 2019 amendments its provisions are to be construed no less broadly than their federal counterparts.

125. Plaintiff opposed practices forbidden under the Human Rights Law and under the ADA by filing and litigating No. 24-cv-9269, by prosecuting Appeal No. 25-1527 including his request for reassignment, and by filing No. 26-cv-05949.

126. Each Defendant had actual knowledge of that protected activity.

127. Defendants retaliated by procuring the transfer of Plaintiff's continuation action to the judge whose reassignment he was seeking on appeal, using false factual representations concerning the existence of the appeal and the chronology of the claims, by failing to correct those representations after notice, and by disregarding procedural obligations requiring them to obtain and accurately report Plaintiff's actual position.

128. The conduct was reasonably likely to deter a person in Plaintiff's position from continuing to pursue disability-discrimination claims.

129. Causation is established by the sequence and timing set forth above.

130. Atlantic and Goldberg Segalla are liable to the extent they authorized, directed, adopted, ratified, or knowingly accepted the conduct of their litigation agents undertaken within the scope of the agency and for their benefit.

131. Plaintiff seeks compensatory damages, and such other relief as the Human Rights Law authorizes.

**SIXTH CAUSE OF ACTION**

**Retaliation and Interference — New York City Human Rights Law,**

**N.Y.C. Admin. Code §§ 8-107(7) and 8-107(19)**

**Against All Defendants**

132. Plaintiff repeats and realleges each preceding paragraph.

133. Section 8-107(7) of the New York City Administrative Code makes it an unlawful discriminatory practice for any person to retaliate or discriminate "in any manner" against any person because that person has opposed any practice forbidden under the chapter or has commenced a civil action alleging such a practice.

134. Section 8-107(19) separately makes it an unlawful discriminatory practice for any person to coerce, intimidate, threaten, or interfere with, or attempt to coerce, intimidate, threaten, or interfere with, any person in the exercise or enjoyment of any right granted or protected pursuant to that section.

135. Under the Local Civil Rights Restoration Act of 2005, the provisions of the City Human Rights Law must be construed independently of and more liberally than their federal and state counterparts, and federal and state civil rights law serves only as a floor.

136. Retaliation under § 8-107(7) need not result in an ultimate action or in a materially adverse change. It is sufficient that the conduct was reasonably likely to deter a person from engaging in protected activity.

137. Plaintiff resides in New York County. The submissions and conduct complained of were made in and directed at proceedings in the United States District Court for the Southern District of New York, located in New York County, and the impact of that conduct was felt by Plaintiff within the City of New York.

138. Plaintiff engaged in protected activity by opposing practices forbidden under the City Human Rights Law and the ADA, by commencing and litigating No. 24-cv-9269, by prosecuting Appeal No. 25-1527 including the reassignment request, and by commencing No. 26-cv-05949.

139. Each Defendant had actual knowledge of that protected activity.

140. The right Plaintiff was exercising is the substantive right to be free from disability-based discrimination under the City Human Rights Law and the ADA. Appeal No. 25-1527 and the actions underlying it are the means by which he seeks to vindicate that right. Conduct aimed at impairing those proceedings interferes with the right itself within the meaning of § 8-107(19).

141. Defendants retaliated and interfered by the conduct described above, including the false representation that Plaintiff had not appealed, the failure to correct that representation after notice and acknowledgment, the false factual premise offered in support of relatedness, the

failure to disclose the pending reassignment request to the court from which transfer was sought, and the coordinated pursuit of an assignment whose propriety was itself the subject of Plaintiff's protected appellate activity.

142. That conduct was reasonably likely to deter a reasonable person in Plaintiff's position — a self-represented, dialysis-dependent litigant without electronic filing privileges — from continuing to pursue disability-discrimination claims.

143. Section 8-107(13) provides for the liability of an employer or other covered entity for the conduct of its agents, and § 8-107(6) makes it unlawful to aid, abet, incite, compel, or coerce the doing of any act forbidden under the chapter.

144. Atlantic and Goldberg Segalla are liable for the conduct of their litigation agents undertaken within the scope of the agency and for their benefit, and for conduct they authorized, directed, adopted, ratified, or knowingly accepted.

145. Chartwell and Traub Lieberman are liable for the conduct of Peart and Straus respectively, undertaken within the scope of their employment or association.

146. Plaintiff seeks compensatory and punitive damages, injunctive relief, and attorney's fees and costs as authorized by N.Y.C. Admin. Code § 8-502.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment:

A. Declaring that Defendants Straus and Peart violated New York Judiciary Law § 487;

B. Awarding Plaintiff his proven damages under § 487 and trebling those damages as the statute requires;

C. Declaring that Defendants retaliated against Plaintiff in violation of 42 U.S.C. § 12203(a) and interfered with his exercise of ADA rights in violation of § 12203(b);

C-1. Declaring that Defendants retaliated against Plaintiff in violation of N.Y. Exec. Law § 296(7) and retaliated against and interfered with him in violation of N.Y.C. Admin. Code §§ 8-107(7) and 8-107(19);

C-2. Awarding compensatory damages under the New York State and City Human Rights Laws, punitive damages under N.Y.C. Admin. Code § 8-502, and attorney's fees and costs as authorized thereby;

D. Enjoining Defendants from making knowingly false factual representations concerning the existence, status, or content of Plaintiff's ADA proceedings in order to obtain procedural relief against him, while preserving their right to advance good-faith defenses and lawful advocacy;

E. Awarding costs and litigation expenses recoverable by law;

F. Awarding pre- and post-judgment interest where authorized; and

G. Granting such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: 8/26/2026, 2026
New York, New York

/s/ Jason Wimberly

Jason Wimberly
Plaintiff, Pro Se
231 E. 117th Street, Apt. 5D
New York, New York 10035